D/F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

PIERRE ARIAS

                Petitioner,

      -against-

WILLIAM CONNOLLY, Superintendent, Fishkill
Correctional Institute,

                Respondent.
------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**15-CV-5476 (NGG)**

NICHOLAS G. GARAUFIS, United States District Judge.

Before the court is Petitioner Pierre Arias's pro se motion, pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, for relief from the dismissal of his petition for habeas corpus (the "Petition") as untimely. (See Feb. 26, 2016, Min. Entry; Clerk's J. (Dkt. 9); Pet'r's Mot. to Vacate Clerk's J. ("Mot.") (Dkt. 13).) For the reasons that follow, the motion is DENIED.

I.     BACKGROUND

Petitioner is a prisoner at the Fishkill Correctional Facility, where he is currently serving a sentence of fifteen years to life in prison following his convictions in the New York Supreme Court, Queens County, for murder in the second degree and attempted murder in the second degree. See People v. Arias, 64 A.D.3d 786 (N.Y. App. Div. 2009) (affirming the judgment of conviction). (Pet. For Habeas Corpus ("Pet.") (Dkt. 1) at 1.) According to the evidence presented at his trial, Petitioner and several friends went to see a movie at a theater in Forest Hills, Queens, late on the night of December 23, 2004. (E.g., Tr. of Test. of Herman Gerardi ("H. Gerardi Test.") (Dkt. 7-8) 1129:23-1136:21 (ECF pp. 1304-11).) At the movie theater, one of Petitioner's friends, Daniel Cho, picked a fight with another moviegoer, Davey Adams, whom

1

Cho did not know. (E.g., Tr. of Test. of Francis Lopez ("Lopez Test.") (Dkt. 7-7) 844:12-847:13 (ECF pp.1021-24).) After the movie ended, Cho and another of Petitioner's friends, Peter Gerardi, accosted Adams outside the theater and demanded that he fight them. (Lopez Test. 852:7-858:7 (ECF pp. 1029-35); Tr. of Test. of Eduardo Avilez (Dkt. 7-10) 1377:1-1380:25 (ECF pp. 1552-55).) Adams attempted to deflect these provocations, but after Gerardi "sucker-punched" him, a brawl ensued between Petitioner and his friends, on the one hand, and Adams and his friends, on the other. (Lopez Test. 864:14-880:7 (ECF pp.1041-57); Tr. of Test. of Yadjiel Collado ("Collado Test.") (Dkt. 7-9) 1270:16-1278:14 (ECF pp.1445-53).) During the melee, Adams was stabbed in the abdomen and back, and his friends Yadjiel Collado and Francis Lopez were stabbed in the arm and back and slashed on the head, respectively. (E.g., Tr. of Test. of Roman Shakh (Dkt. 7-5) 577:7-10 (ECF p. 754); Lopez Test. 884:10-20, 919:19-2 (ECF pp.1061, 1096); Collado Test. 1279:2-3, 1280:20-1283:3 (ECF pp. 1454, 1455-58).) Adams died from his wounds. (Tr. of Test. of Sean Kelly (Dkt. 7-9) 1345:20-1346:17 (ECF pp.1521-22).) The prosecution presented extensive evidence that Petitioner—who was 15 years old at the time—was responsible for stabbing Adams, Collado, and Lopez. (E.g., Tr. of Test. of Giselle Guzman (Dkt. 7-6) 738:4-22, 743:14-745:10 (ECF pp.915, 920-22); Lopez Test. 867:22-868:25 (ECF pp.1044-45); Collado Test. 1276:6-1279:8 (ECF pp.1451-54); H. Gerardi Test. 1141:2-8, 1150:8-13, 1154:15-1155:18 (ECF pp.1316, 1325, 1329-30); Sept. 12, 2006, Trial Tr. (Dkt. 7-12) 1714:3-5 (ECF p.1889).)

Defendant was tried and, on September 12, 2006, convicted. (Id. 1709:12-25 (ECF p.1884.) Petitioner timely appealed to the Appellate Division. In his brief, Petitioner argued that (1) the trial court erred by giving an "acting in concert" instruction; (2) the prosecution had failed to establish that he possessed the requisite mens rea; and (3) the verdict was against the weight of

the evidence. (See Appellant's Br. (Dkt. 7) at 26, 38, 46 (ECF pp.68, 80, 88)).) On July 28, 2009, the Appellate Division affirmed his conviction, concluding that the trial court's charge to the jury regarding "acting in concert" was not improper; that Petitioner's mens rea argument was not preserved for appeal and, in any event, was unmeritorious; and that the weight of the evidence supported the jury's guilty verdict. See Arias, 64 A.D.3d at 786.

On January 27, 2014—more than four years after the Appellate Division denied his appeal—Petitioner sought leave to appeal from the Court of Appeals. (Notice of Mot. (Dkt. 7) at ECF p.114; Pet'r Aff. (Dkt. 7) at ECF p.116.) Respondent opposed Petitioner's request for leave to appeal as untimely. See N.Y. Crim. Proc. L. 460.10(5) (authorizing a defendant to seek leave to appeal from the Court of Appeals "[w]ithin thirty days after service upon the appellant of a copy of the order sought to be appealed"). (Resp't Opp'n to Leave to Appeal (Dkt. 7) at ECF p. 120.) The Court of Appeals summarily denied Petitioner leave to appeal on April 14, 2014. People v. Arias, 9 N.E.3d 912 (N.Y. 2014). Petitioner's conviction thus became final, for purposes of federal habeas review, on July 13, 2014, when his time for seeking a writ of certiorari from the U.S. Supreme Court expired. See 28 U.S.C. § 2244(d)(1)(A); Epps v. Poole, 687 F.3d 46, 49 (2d Cir. 2012).

On August 30, 2015—more than thirteen months after his conviction became final—Petitioner filed his pro se petition for habeas corpus. The petition asserted three grounds for relief, which tracked the headings of Petitioner's brief to the Appellate Division. (Compare Appellant's Br. at i-ii (ECF pp.41-42), with Petition at 7-8.) Respondent moved to dismiss the petition as untimely. (Mot. to Dismiss (Dkt. 6).) Petitioner did not respond to the motion. At oral argument on the petition, held before Judge John Gleeson of this district on February 26, 2016, however, Petitioner argued that the court should toll the applicable statute of limitations

3

because, while he was being transferred between prison housing units on April 17, 2015, he misplaced an unmarked bag containing his legal research (his "draft bag"), which a corrections officer then moved to a storage room:

> THE COURT: So the People, through Ms. Abbot, are claiming that you had one year from July 13, 2014, to file your petition, but you filed it later than that, so I should kick it out on statute of limitations grounds. What do you say? What is your response to that?
>
> MR. ARIAS: I say, well, something had happened, had occurred during a movement within the facility where I was actually missing a lot of my—all of my legal documents. I got transferred on 4/17 from one housing unit, from one building to another building, and some property wasn't—all of my property was not given to me.
>
> And I wrote the counselors, I wrote the head counselor here, Mr. Eddie, concerning—you know, all he really had to do was ask the officers who were present, because they had found my bag in a storage closet.
>
> Since I'm not moving from facility to facility, they don't put name tags on the bags. So they just took a bag and they put it along with other property. And it was held, I believe, approximately like 60— a little over 60 days. And when it was found, it was returned to me.
>
> But that's where I had all of my highlighted case law, all my notes, everything that I was trying to argue. And that did hinder my process a lot.

(Tr. of Oral Arg., Feb. 26, 2016 ("Tr. of Oral Arg.") (Dkt. 11) 4:24-5:21.)

At the end of oral argument, Judge Gleeson dismissed the petition as untimely, concluding that Petitioner's explanations regarding his lost draft bag "don't constitute grounds for tolling at all, in my view, and not for a sufficient period even if they had merit to render the petition timely." (Id. 10:19-11:19.) In particular, Judge Gleeson questioned Petitioner as to why, even assuming that he lacked access to his legal materials from mid-April until mid-June 2015, Petitioner was prejudiced in his ability to file a timely petition, given that the petition he filed simply reproduced the three headings of his Appellate Division brief. (Id. 6:24-7:24.)

4

Judge Gleeson dismissed the petition and declined to issue a certificate of appealability. (Clerk's J. (Dkt. 9); Feb. 26, 2016, Min. Entry.) On August 19, 2016, the U.S. Court of Appeals for the Second Circuit denied Petitioner's motion for a certificate of appealability and dismissed his appeal "because [Petitioner] has not shown that 'jurists of reason would find it debatable whether the district court was correct in its procedural ruling' as to the untimeliness of the . . . Petition." (USCA Mandate (Dkt. 12) (quoting Slack v. McDaniel, 529 U.S. 473, 478 (2000)).)

On March 30, 2017—more than thirteen months after the district court dismissed his habeas petition—Petitioner filed the Rule 60(b) motion that is currently before the court. Following Judge Gleeson's resignation, the case was transferred to this court, which directed Respondent to respond to the motion. (Apr. 4, 2017, Order Reassigning Case; Order (Dkt. 14).)

## II. DISCUSSION

Petitioner argues that the court should grant him relief from the dismissal of his habeas petition as untimely. Although his argument is not entirely clear, Petitioner appears to contend that Judge Gleeson either misunderstood his arguments concerning the "misplaced" or "stolen" "draft bag" (Mot. at 4, 8) or made legal or factual errors in rejecting those arguments (see id. at 3, 4, 8).[1] The parties dispute whether the motion is properly construed as seeking relief under Rule 60(b)(1) or Rule 60(b)(6). Respondent argues that because Petitioner seeks relief on the basis of the court's purported mistake, the motion is properly construed as seeking relief under Rule 60(b)(1), which permits the court to "relieve a party or its legal representative from a final judgment, order, or proceeding," in case of "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1) (emphasis added). (Resp't Mem. of Law in Opp'n to Mot.

---

[1] Because Petitioner is proceeding pro se, the court construes the motion liberally in his favor. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

5

(Dkt. 15) at 14.) Petitioner styles the motion, however, as seeking relief under Rule 60(b)(6), which permits the court to grant relief from a final judgment, order, or proceeding for "any reason that justifies relief." Fed. R. Civ. P. 60(b)(6). (Mot. at 1, 4.)

The court agrees with Respondent that the motion is properly construed as seeking relief under Rule 60(b)(1). It is well-established in this circuit that Rule 60(b)(1) permits relief from a judgment, order, or proceeding resulting from a judicial mistake. See United Airlines, Inc. v. Brien, 588 F.3d 158, 175 (2d Cir. 2009); Gey Assocs. Gen. P'ship v. 310 Assocs. (In re 310 Assocs.), 346 F.3d 31, 34-35 (2d Cir. 2003) (per curiam). See generally 11 Charles A. Wright et al., Federal Practice and Procedure § 2858.1, at 376-85 (3d ed. 2012) (discussing whether Rule 60(b)(1) encompasses requests for relief from judicial mistakes). It is likewise well-established that Rule 60(b)(6) cannot be used to obtain relief on any grounds on which relief is available under Rule 60(b)(1): these provisions are "'mutually exclusive,' such 'that any conduct which generally falls under the former cannot stand as a ground for relief under the latter.'" Stevens v. Miller, 676 F.3d 62, 67 (2d Cir. 2012) (quoting United States v. Cirami, 535 F.2d 736, 740 (2d Cir. 1976)); accord United Airlines, 588 F.3d at 175. Because Petitioner seeks relief from a supposed judicial error, he must do so under Rule 60(b)(1), not Rule 60(b)(6).

Because Petitioner's motion, properly construed, seeks relief under Rule 60(b)(1), it is untimely. A motion for relief under Rule 60(b)(1) must be made "no more than a year after the entry of the judgment or order or the date of the proceeding" from which the movant seeks relief. Fed. R. Civ. P. 60(c)(1). Petitioner, however, filed his motion more than thirteen months after Judge Gleeson dismissed his petition. The motion is therefore untimely. See United Airlines, 588 F.3d at 175 ("[Rule 60(b)(1) and Rule 60(b)(6)] are exclusive and 'an appellant cannot circumvent the one-year limitation [of Rule 60(b)(1)] by invoking the residual clause (6) of

Rule 60(b).'" (second alteration in original) (quoting Serzysko v. Chase Manhattan Bank, 461 F.2d 699, 702 (2d Cir. 1972) (per curiam)).)

Even if Petitioner's motion were construed as seeking relief under Rule 60(b)(6), the result would be the same. In order to obtain relief under Rule 60(b)(6), a party must, among other things, make a motion "within a reasonable time," Fed. R. Civ. P. 60(c)(1), and demonstrate "extraordinary circumstances" warranting relief, see Buck v. Davis, 137 S. Ct. 759, 777-78 (2017). Petitioner has done neither.

With respect to timeliness, Petitioner offers no explanation for why the thirteen-month delay between the dismissal of his petition and the filing of his Rule 60(b) motion challenging that dismissal was "reasonable." See Amoco Overseas Oil Co. v. Compagnie Nationale Algerienne de Navigation, 605 F.2d 648, 656 (2d Cir. 1979) (unexplained one-year delay was unreasonable). The court can discern no such explanation from "the particular circumstances of the case," see PRC Harris, Inc. v. Boeing Co., 700 F.2d 894, 897 (2d Cir. 1983), as Petitioner was aware of the only grounds on which he seeks relief—that Judge Gleeson supposedly misunderstood his arguments regarding his draft bag, or erred in rejecting those arguments—at the time the petition was dismissed. The motion is therefore untimely, even under Rule 60(b)(6).

Nor does Petitioner identify any "extraordinary circumstances" warranting relief from the dismissal of his petition. First, Judge Gleeson's conclusion that Petitioner did not warrant equitable tolling was plainly correct. Petitioner's temporary loss of his draft bag was not an "extraordinary circumstance" warranting equitable tolling.[2] See Prescod v. Brown, No. 10-CV-

---

[2] A prison official's intentional confiscation of a prisoner's legal materials constitutes an "extraordinary" circumstance as a matter of law. Valverde v. Stinson, 224 F.3d 129, 133-34 (2d Cir. 2000); see Morello v. James, 810 F.2d 344, 347 (2d Cir. 1987). Likewise, a prison official's interference with prisoners' attempts to indicate their constitutional right of meaningful access to the courts may, in certain circumstances, be "extraordinary." See Tanner v. Yukins, 776 F.3d 434, 436, 438-39 (6th Cir. 2015) (reversing the denial of Rule 60(b) relief where guards prevented prisoner from filing timely appeal); cf. Hizbullahankhamon v. Walker, 255 F.3d 65, 75 (2d Cir. 2001) (Sotomayor, J.) (reserving the question of "whether the deprivation of petitioner's legal materials and his access to

7

2395 (SHS) (AJP), 2011 WL 182063, at *5 (S.D.N.Y. Jan. 20, 2011) (negligent loss of legal materials is not extraordinary), report and recommendation adopted, No. 10-CV-2395 (SHS), 2011 WL 497855 (S.D.N.Y. Feb. 10, 2011). Even if the loss of the draft bag were an "extraordinary circumstance" for purposes of equitable tolling, Petitioner did not demonstrate that he diligently attempted to obtain relief. See Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005). By Petitioner's own account, he lost access to his drafts between either February 6, 2015 (Mot. at 4), or April 17, 2015 (Tr. of Oral Arg. 5:7, 5:22-6:1, 7:1-2),[3] and mid-June 2015 but only filed a skeletal petition more than two months later. Second, even if the court were to conclude, contra Judge Gleeson, that Petitioner warranted equitable tolling, that would not constitute an "extraordinary circumstance" warranting Rule 60(b)(6) relief. As courts in this circuit have noted, "[t]he Second Circuit routinely finds that Rule 60(b)(6) motions that simply seek to relitigate all issues presented in an action or argue that the district court's decisions were wrong are not sufficiently 'extraordinary' to warrant relief under Rule 60(b)(6)." Dolan v. Select Portfolio Servicing, Inc., No. 03-CV-3285 (PKC), 2017 WL 4357336, at *8 (E.D.N.Y. Sept. 29, 2017) (collecting cases). In the absence of any "extraordinary circumstance" warranting relief from the dismissal of the petition, Petitioner cannot obtain relief under Rule 60(b)(6).

---

law library materials could constitute an extraordinary circumstance warranting equitable tolling). No such circumstances are present here, as Petitioner specifically notes that he "does not contend that correction officer[s] intentionally confiscated his legal papers." (Mot. at 7.)

[3] Petitioner repeatedly stated before Judge Gleeson that he misplaced his draft bag on April 17, 2015. (Tr. of Oral Arg. 5:7 ("I got transferred on 4/17 . . . ."); id. 5:22-6:3 ("THE COURT: So you were transferred within the facility on April 17? MR. ARIAS: Yes. THE COURT: And then you didn't have access to your papers from April 17th to what, to June? You said two months? MR. ARIAS: Yes. I believe it was June 19th or June 21st or 22nd.") Petitioner now avers that he lost the draft bag on February 6, 2015. (Mot. at 4-6.) The court need not address this unexplained contradiction, as Petitioner's motion is unavailing regardless of when he lost his draft bag.

## III. CONCLUSION

Petitioner's motion to vacate the dismissal of his habeas petition (Dkt. 13) is untimely under Rule 60(b)(1). Even if it could be construed as a request for relief under Rule 60(b)(6), the motion would be both untimely and unmeritorious. Accordingly, the motion is DENIED.

The Clerk of Court is respectfully DIRECTED to mail a copy of this order to pro se Petitioner Pierre Arias.

SO ORDERED.

Dated: Brooklyn, New York
November 20, 2017

s/Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge